## Thompson v. Frazier, Appellant.

Argued April 8, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*C. E. Brockway,* with him *Brockway, Whitla & McKay,* for appellant.

*Nathan Routman,* for appellee.

OPINION BY RENO, J., July 19, 1946:

Judgment for plaintiff in this action of ejectment was entered by the court below upon an agreed statement of the facts. Numerous questions of law were raised below, but here the argument was confined to four alleged errors in the tax-sale proceedings under which plaintiff acquired title to the premises. The action was instituted, and judgment was entered, against appellant and his wife, and they appealed. Apparently she has no interest in the litigation, and at the argument in this court a non pros was entered as to her. The case proceeds with the husband as sole appellant.

Plaintiff's title rests upon the deed of the county commissioners, who exposed the premises to public sale and sold them to plaintiff. No attack is made upon the commissioners' action, but appellant challenges the antecedent proceedings whereby the county treasurer sold and conveyed the property to the commissioners. The treasurer's sale was held April 29, 1940; he conveyed to the commissioners by a deed dated June 22, 1942, and acknowledged the next day; and the commissioners' deed to plaintiff is dated October 26, 1942. The proceedings were based, and the decision must rest, upon the Act of May 29, 1931, P. L. 280, as amended by the Act of June

20, 1939, P. L. 498, 72 PS §5971a, et seq. In a recent case, *Beacom v. Robison*, 157 Pa. Superior Ct. 515, 43 A. 2d 640, Judge ARNOLD has supplied a helpful analysis of the statute.

I. The treasurer's advertisement announced a public "County Treasurer's Sale of Seated Lands Against Which Taxes are Filed for years 1931-1932." The delinquent taxes upon appellant's premises for those years were $113.19. But the advertisement stated that the "unpaid taxes levied and assessed against" the property were $561.30, which figure included not only the 1931 and 1932 taxes, but also those for 1933, 1934, 1935, 1936, 1937, and 1938 which were likewise unpaid. The latter figure was advertised because under §6, 72 PS §5971j, the purchaser at a tax sale is obliged "to pay all taxes, except such taxes as have heretofore been filed as liens . . .", and the county commissioners are required to purchase "any such property, for which an amount sufficient to pay such taxes, . . . is not bid." Thus the figure, $561.30, was notice of the minimum price for which the property could be purchased at the treasurer's sale. Appellant contends that he could have stopped the sale by paying $113.19, and that the advertisement was capable of misleading him by incorrectly stating the amount of the taxes due.

Appellant had title to the premises since 1927. He must have known, possibly better than anyone, the actual amount of the delinquent taxes for 1931 and 1932, or he could have readily ascertained the correct amount. We cannot perceive how the statement in the advertisement, even assuming that it violated the statute, could have misled *him* to his harm.

II. Pursuant to §7, 72 PS §5971*l*, the treasurer reported the sale by a return on July 16, 1940, which was within "the first term of a court of common pleas" succeeding the sale. It was confirmed nisi by the president, and sole, judge during term, not vacation, time at his chambers but not in an open session of the court.

The judge's chambers, so we were informed, adjoin the court room, and appellant contends that, to give validity to his act, the judge should have entered the court room, ascended the bench, and there affixed his signature to the order.

Since the president judge was the sole judge, we do not meet the question, frequently debated in this State, as to the power of one judge to perform a judicial act without the concurrence of his associates. Nor do we squarely meet the question whether, since "court" and "judge" are so frequently used interchangeably, that they are virtually synonymous. See *Com. v. Shawell*, 325 Pa. 497, 191 A. 17. The precise question is, assuming that the return should have been made in an open session of the court, which we and the lower court think is the better practice, whether appellant was deprived of an essential legal right by the confirmation nisi at chambers.

The statute, §7, supra, provides: "Upon the presentation of said report or return, if it shall appear to said court that such sale has been regularly conducted, under the provisions of this act, the said report and the sale so made shall be confirmed nisi. The county treasurer shall, at the expense of the county, publish a general notice, once in a newspaper of general circulation throughout the county, stating that the report of the county treasurer with respect to any such sale or sales for delinquent taxes has been presented to the court, giving the date thereof, and that exceptions thereto may be filed within sixty days after the date of return, otherwise the report will be confirmed absolutely."

No provision is made for personal or other notice to the delinquent taxpayer of the exact time when the return to court will be made. He is bound to know that it must be, and will be, reported during the term next succeeding the sale. If he desires to be present at the confirmation nisi, he is obliged to be in the court room from the day succeeding the sale until the confirmation,

and undoubtedly he has the right to do so. No provision allows an attack upon the sale prior to the nisi confirmation. Hence, no purpose could be served by appellant's presence, and the order would be made whether or not he was present. Whether present or not, he is entitled to sixty days from the date of the return within which to file exceptions, and notice of the date of the return and the confirmation is given him by the treasurer's advertisement in accordance with §7. He is not prejudiced by the confirmation nisi, none of his rights or claims are thereby foreclosed or adjudicated, and until sixty days have passed he has ample opportunity to present them to the court. Consequently the confirmation nisi at chambers was a mere formal irregularity, an inconsequential error, and it did not vitiate the sale or the subsequent proceedings.

III. Notice was given of the confirmation nisi according to the act, but appellant contends that the advertisement was insufficient because it failed to list the properties sold, and to state the names of the taxpayers, descriptions of the properties, the name of purchasers, and the sale prices. But §7, supra, requires only *"a general notice."* (Italics supplied.) The advertisement of the treasurer, under the heading, "Notice of filing return of tax sales held Apr. 29, 1940", contained all the information required by the act, and followed the exact language of §7. The act does not require the treasurer to include the details of the sale of several hundred properties in "a *general* notice". Such details are to be obtained from the report to which the owner's attention is directed by the notice. The fact to be advertised is the presentation of the report, not its contents.

IV. As noted, the treasurer conveyed to the commissioners more than two years after the sale. As a result, appellant contends, that title did not vest in the commissioners until the date of the acknowledgment of the treasurer's deed, that his right of redemption began on that date, June 23, 1942, and that the right extended for five years after that date.

For the latter proposition appellant relies upon the Act of July 19, 1935, P. L. 1321, 72 PS §5971o. The question is apparently answered by a later amendment to the Act of 1931. The Act of June 20, 1939, P. L. 498, §8, amending §16 of the original Act of 1931, supra, provides: "The right of redemption . . . of all lands *hereafter* purchased by the county commissioners, . . . shall remain for *two years after such sale.*" (Italics suplied.) Appellant's land was purchased by the commissioners *after* the effective date of the amendment of 1939, that is, on April 29, 1940, and the period of redemption is regulated by that act. However, although appellant does not rely upon it, under the Act of July 28, 1941, P. L. 535, 72 PS §6105.1, et seq., appellant had a right to redeem "so long as the title thereto remains in said political subdivision", or under the Act of July 17, 1935, P. L. 1091, §1, 72 PS §5879, the commissioners may *permit* redemption "so long as the title thereto remains in the county." Appellant never sought the advantage of these provisions although he was present at the commissioners' sale. Be that as it may, appellant actually had the right to redeem until the commissioners sold to plaintiff, and his right was neither enlarged nor diminished by the delay of the treasurer in conveying to the commissioners.

For his proposition that the right of redemption is related to the date of the acknowledgement of the treasurer's deed, appellant relies upon cases decided under acts which made the acknowledgement of the deed in court the sole method of making an official record of the sale. The cases need not be examined here, for the Act of 1931 effected a basic change, and now the record of the confirmation of the report serves the purpose which under other legislation was accomplished by the record of the acknowledgment of the deed. The Act, §14, 72 PS §5971n, does indeed provide for an acknowledgment of the treasurer's deed, but it fixes no time within which the deed shall be acknowledged. The delay in acknowl-

edging the deed had no effect upon appellant's right to redeem, and therefore did not harm him.

V. Once the conclusion is reached that the confirmation nisi is invulnerable, the final and conclusive answer is supplied by §12, 72 PS §59711, as amended by the Act of 1939, supra, which provides: "If no objections or exceptions are filed as herein provided . . . *and the sale confirmed absolutely,* the validity of the assessment of the tax and its return for nonpayment, *and the validity of the proceedings of the treasurer with respect to such sale shall not thereafter be inquired into judicially, in equity or by .civil proceedings,* by the person or persons in whose name such property was sold, his or her or their heirs, or his, her or their grantees or assigns, subsequent to the date of the assessment of the taxes for which such sale was made; *and such sale,* after the period of redemption shall be terminated, *shall be deemed to pass a good and valid title to the purchaser,* free from any liens or encumbrances whatsoever, except such liens as are hereinbefore specifically saved, and *in all respects as good and effective as if acquired by a sheriff's deed,* provided, the purchaser has filed the bond for surplus moneys as hereinafter provided." (Italics supplied). The effect of the provision, "in all respects as good and effective as if acquired by a sheriff's deed", is that a treasurer's deed can be defeated only by fraud or want of authority to sell, and that even gross defects or irregularities are cured by the absolute confirmation of the sale. *Derr v. New York J. S. L. Bk.,* 335 Pa. 309, 6 A. 2d 899. See also *Beacom v. Robison,* supra.

The tendency of modern legislation is to strengthen tax titles. 5 Thompson on Real Property (Perm. Ed.) §§2925, 2926. Because they were subject to attack for technical, even trifling, irregularities, they were snares and delusions, and people have been unwilling to invest in them. As a consequence, the coffers of our political subdivisions are cumbered with properties acquired at tax sales for which there is no ready market, and yet,

because taxes upon them remain unpaid and accumulate from year to year, the subdivision is deprived of needful current revenue. The statute is an attempt to correct this condition by making tax titles more attractive and therefore more readily marketable, and it must be presumed that in its enactment the legislature intended "to favor the public interest as against any private interest": Statutory Construction Act of May 28, 1937, P. L. 1019, §52 (5), 46 PS §552.

Judgment affirmed.