346

## Legion Club of Belle Vernon, Incorporated, v. Jones et al.

*H. Reginald Belden,* for petitioner.
*Edward B. Doran,* for respondents.

LAIRD, J., July 18, 1947.—This case comes before us on a petition filed by plaintiff for a rule to show cause why the title of petitioner to certain property located in the Borough of North Belle Vernon, should not be declared valid and indefeasible, and an answer thereto filed in behalf of Joseph S. Jones and Opal S. Jones, two of defendants. The proceeding was insti-

tuted for the purpose of establishing title to land acquired at a sale for unpaid taxes under the provisions of the Act of July 18, 1917, P. L. 1072, as amended by the Acts of May 10, 1923, P. L. 182 and May 31, 1923 P. L. 477, 72 PS §6144.

In the language of the Supreme Court in Boocks' Petition, 303 Pa. 363, quoting from page 366: "We will treat the proceedings as having been begun under the act which was in force," that of May 16, 1919, P. L. 180, Act of May 9, 1923, P. L. 182, or Act of May 31, 1923, P. L. 477.

The facts are not in dispute as a stipulation has been entered into by and between counsel for petitioner and counsel for defendants, Joseph S. Jones and Opal S. Jones, agreeing upon the facts. This stipulation sets forth that petitioner purchased from the County Commissioners of Westmoreland County, by deed dated February 8, 1946, certain real estate in the Borough of North Belle Vernon, Westmoreland County, Pa., which had been sold to the county commissioners by the county treasurer for nonpayment of taxes on eight different occasions, the first being July 25, 1938, and the last being December 10, 1945. The stipulation also contains the following agreed facts:

"8. Since the date of the conveyance of said property to petitioner by the county commissioners, petitioner has been in possession of the said property, is now in possession of said property, and claims title thereto.

"9. On November 26, 1946, petitioner filed its petition for a rule to show cause why its title to said property should not be adjudicated valid and indefeasible as against all rights or claims whatsoever.

"10. On January 24, 1947, petitioner secured a special order of court in compliance with the Act of May 3, 1909, P. L. 424, as amended, (45 PS §39), dispensing with publication in the Westmoreland Law Journal of the sale of the said property by the county treasurer to the county commissioners on July 25, 1938.

"11. On March 15, 1947, Joseph S. Jones and Opal S. Jones filed an answer to the petition at the above number and term, but no answer was filed by or in behalf of any of the other defendants.

"12. On March 19, 1947, by order of your honorable court, judgment was entered against all defendants except Joseph S. Jones and Opal S. Jones, and petitioner's title to the said real estate was adjudicated valid and indefeasible as against everyone except Joseph S. Jones and Opal S. Jones."

By decree of this court dated June 6, 1947, we erroneously dismissed the petition and discharged the rule as to Joseph S. Jones and Opal S. Jones, holding that since this is a proceeding to quiet the title to real estate, and since the act under which the proceeding was instituted had been suspended by the Rules of Civil Procedure adopted by the Supreme Court of Pennsylvania, the proceeding in this case was in conflict with rule 1455, and therefore must be dismissed. Exceptions to this decree were promptly filed by petitioners; and the matter having been heard on exceptions and attorneys for petitioner and defendants, Joseph S. Jones and Opal S. Jones, having agreed that the matter should not have been decided on a question of procedure, and the court having been convinced of its error in so deciding the question, we entered a decree on June 7, 1947, concurred in by his honor, Judge George H. McWherter, sustaining plaintiff's exceptions so that the case might be decided on its merits.

We are convinced that the legislature and the Procedural Rules Committee did not intend that all proceedings begun prior to January 1, 1947, the effective date of the rules, must be scrapped and begun anew, for obviously in many cases the statute of limitations might have expired in the meantime, and to so hold might involve serious questions as to the constitutionality of the rules and the act of assembly by which they were authorized. The decree of the Supreme Court

of Pennsylvania adopting the rules provided, inter alia, as follows: "January 1, 1947, is hereby fixed as the effective date of said Rules, and they shall apply to actions pending at that time." We feel that the intention of the Supreme Court and the Procedural Rules Committee was that all proceedings subsequent to January 1, 1947, in actions pending at that time, must be made to conform to the Rules of Civil Procedure. Therefore, we feel bound to treat the proceeding in this case as an "action to quiet title", as though it had been instituted under rule 1061, and this opinion and decree are intended to conform to the provisions of that rule, and the rules which follow, pertaining to actions to quiet title. The answer of defendants, Joseph S. Jones and Opal S. Jones, contains the following allegations, which we shall consider in order:

"2. That respondents are the owners, subject to the life estate of Elizabeth J. Jones, of one half of the real estate described in plaintiff's petition for validation.

"4. That the county commissioners erroneously carrying the assessment in the names of 'Joseph Jones Heirs' and 'Lucille Jones Heirs' and in buying the title from the treasurer through sales held in 1940-1942 and in August of 1945, have so placed the title in a position where the real owners, that is, respondents herein, have acquired a right to redeem the same for a period of two years from the last sale, that is, the sale of August 1945.

"5. That the title to the said real estate acquired by purchase from the county commissioners as set forth in the petition is invalid by reason of the fact that the sale of said real estate by the county treasurer to the county commissioners for the collection of taxes alleged to have been assessed thereon, was illegal and void because said sale was not advertised in the Westmoreland Law Journal, the legal periodical, for Westmoreland County, as required by law and the rule of court.

"6. That petitioners herein base the title that they wish to be validated on that which was acquired by the county commissioners, in the first instance, by a sale from the county treasurer to the county commissioners in July of 1938, and subsequent to such sale, the property was permitted to remain and be assessed in the name of the former owner and was repeatedly sold by the treasurer to the county commissioners; which procedure had the effect of voiding the title acquired by previous sale and which had the further effect of opening up the period of two years' redemption following the last sale of August, 1945.

"7. That respondents have, as of the date of this answer, a period of six months in which to redeem the title now vested in its inchoate in the petitioners.

"8. That in the sales from the treasurer to the county commissioners for August 7, 1944, and December 10, 1945, the property was assessed to 'Lucille Jones Heirs' which assessment is inaccurate and incorrect inasmuch as Lucille Jones is a living person and has, as yet, no heirs.

"9. That plaintiff's petition does not set out the steps by which the commissioners acquired the title herein, but avers merely in this regard, that the assessments and returns and the repeated sales were erroneously made by the treasurer following the first sale in 1938."

It is the contention of petitioner in this case that the sales subsequent to the sale on July 25, 1938, were invalid by reason of lack of authority to sell, the county commissioners having failed to comply with the provisions of the Act of July 8, 1885, P. L. 268, 72 PS §6111, which provides that following the purchase by county commissioners of property sold by the county treasurer for nonpayment of taxes, "And it shall be the duty of the commissioners to provide a book, wherein shall be entered the name of the person or persons as whose estate the same shall have been sold,

the quantity of land or number of lot and number of tract, if any, the amount of the taxes and the costs it was sold for, and every such tract of land shall not thereafter, so long as the same shall remain the property of the county, be charged in the duplicate of the proper collector, but for five years next following such sale, if it shall so long remain unredeemed, the commissioners shall, in separate columns in the same book, charge every such tract of land with like county, school, road, or other taxes as would have been chargeable against the said land had the same not been sold and purchased by the commissioners as aforesaid."

It is commonly known that the County Commissioners of Westmoreland County never have complied with this provision, but have continued to permit properties to be assessed in the name of the former owner and sold time after time by the treasurer. Although it is true that mere irregularities do not invalidate a sale, where the defect constitutes a direct violation of an act of assembly, it is not a mere irregularity, but amounts to an actual want of authority to make the sale, and the sale therefore is a nullity. See Norris v. Delaware, Lackawanna & Western Railroad Co., 218 Pa. 88. It follows, therefore, that the sales subsequent to the 1938 sale in this case were invalid by reason of the violation by the county commissioners of the provisions of the above cited act of assembly.

In the case of Brew v. Sharer, 42 Pa. Superior Ct. 89, plaintiff claimed under a purchaser at a treasurer's sale in 1894. The county commissioners purchased the property in 1898 for nonpayment of taxes for 1896 and 1897, had the lands assessed for taxes for the years 1898 and 1899, and for those taxes the property was sold in 1900 to one of defendants. Within two years after that sale, plaintiff offered to redeem the sale of 1898 to the county commissioners and the sale of 1900 to defendant. The court held that plaintiff's right to redeem was limited to two years after the

sale to the county commissioners in 1898, and affirmed a judgment for defendant. At page 98 the court made the following statement:

"The action of the Commissioners in placing the lands purchased by them upon the assessment lists and permitting them to be assessed for taxes and sold by the treasurer may have been irregular, but that can in no way inure to the benefit of the plaintiff. He must recover upon the strength of his own title and not upon the want or weakness of that of his adversary, and whether or not, therefore, the treasurer's sale for taxes irregularly assessed vested title in Sharer is a matter of no consequence, so far as this inquiry is concerned."

We are convinced, from our review of the record, that the law and the equities in the present case lie with petitioner. No taxes have been paid by the Joneses since 1931. The property was occupied rent free and tax free by the Joneses, or some of them, until after petitioner acquired title from the county commissioners in February 1946. Meanwhile, taxes aggregating many thousands of dollars had accumulated against the property, and petitioner purchased the premises from the county commissioners for the sum of $7,381.27, the face amount of the taxes due at the time of the presentation of the petition; and later paid to the county treasurer nearly $600 for 1945 taxes. It appears that petitioner has gone to great expense, and contemplates further expenditures for the improvement of the property as a legion home.

We believe that defendants are now contesting petitioner's validation proceeding, not in good faith, and not because they desire to retain, hold, or regain title to the property, but because they desire to force petitioner to pay money to defendants in order to avoid delay in validating its title.

Paragraph 5 of defendants' answer avers that the 1938 sale by the county treasurer to the county com-

missioners was illegal and void because said sale was not advertised in the Westmoreland Law Journal. This objection is without merit for two reasons. First, the act requiring publication in the legal periodical of the county provides for such publication "unless dispensed with by special order of Court". Petitioner in this case secured such special order of court on January 24, 1947, nunc pro tunc as of July 25, 1938, the date of the sale. Second, the treasurer's sale of this property was duly confirmed, and no objections or exceptions were filed within 60 days after the date of the return of sale as required by the Act of May 29, 1931, P. L. 280, sec. 12, as amended by the Act of June 20, 1939, P. L. 498, sec. 7, 72 PS §5971-L.

The confirmation of the treasurer's sale to the county commissioners and the failure of defendants to file objections or exceptions within 60 days after the date of the return also disposes of the objections raised by defendants in the eighth and ninth paragraphs of their answer, for those objections constitute mere irregularities which are cured by the confirmation of the sale and the failure to file exceptions thereto. See Thompson v. Frazier, 159 Pa. Superior Ct. 395, 48 A.(2d) 6.

Paragraphs 6 and 7 of the defendants' answer constitute mere repetition of the allegations contained in paragraph 4 of the said answer, relating to the right of defendants to redeem within two years after the date of the last sale by the treasurer to the county commissioners. The allegations contained in the said paragraphs 6 and 7 have been answered in our discussion of paragraph 4 of the answer.

To sustain defendants' position in this case would be to abrogate the effect of the tax laws of Pennsylvania, while the decisions hold that the modern tendency is to strengthen tax titles in order to make them more attractive: Thompson v. Frazier, supra. It would be manifestly unfair to petitioner, an organization com-

posed of approximately 250 veterans of both world wars, to permit defendants to allow taxes to accumulate against their property for a period of 15 years, put the county to the expense of advertising and selling the property, put petitioner to the expense of going through a proceeding to authorize the sale of the said property to them, and then to permit defendants to take the position that they have until December 10, 1945, two years after the date of the last sale to the county commissioners, to redeem the said property, even though it is quite apparent that they do not intend to redeem, but merely desire to force petitioner to pay them for a quitclaim deed in order to avoid further litigation. It is well known that tax titles in Pennsylvania, and especially in Westmoreland County, have not been highly regarded by the members of the bar, and most lawyers will not pass title to property purchased at a tax sale unless the title has been subsequently validated.

In Thompson v. Frazier, supra, at page 401, the court made the following statement:

"The tendency of modern legislation is to strengthen tax titles. 5 Thompson on Real Property (Perm. Ed.), §§2925, 2926. Because they were subject to attack for technical, even trifling, irregularities, they were snares and delusions, and people have been unwilling to invest in them. As a consequence, the coffers of our political subdivisions are cumbered with properties acquired at tax sales for which there is no ready market, and yet, because taxes upon them remain unpaid and accumulate from year to year, the subdivision is deprived of needful current revenue. The statute is an attempt to correct this condition by making tax titles more attractive and therefore more readily marketable, and it must be presumed that in its enactment the legislature intended 'to favor the public interest as against any private interest': Statutory Construction Act of May 28, 1937, P. L. 1019, § 52 (5), 46 PS §552."

It was held in Meyers v. Manufacturers and Traders National Bank of Buffalo et al., 332 Pa. 180, that in proceedings under the Act of 1917, supra, it is not necessary to have a hearing, but merely . . . "to determine the question as to whether the respondents should begin proceedings to establish their title upon the pleadings, the petition for the rule, the answer and traverse".

Judgment has already been entered March 19, 1947, by default against William F. Jones, Lucille H. Jones, Elizabeth J. Jones and all other persons except Joseph S. Jones and Opal S. Jones, respondents.

No questions of fact are involved in the present case. It would be idle, therefore, to order them, the said Joseph S. Jones and Opal S. Jones, to bring an action of ejectment against petitioner, which is in possession of the property, for petitioner's title to the property has been adjudicated valid and indefeasible as to the interests of other defendants, William F. Jones, Lucille H. Jones and Elizabeth J. Jones, by decree of this court dated March 19, 1947. In addition to this fact, we are advised that two of said defendants, the former owners of an undivided one-half remainder interest, William F. Jones and Lucille H. Jones, his wife, have executed and delivered to petitioner a quitclaim deed, which has been recorded in the Recorder's Office of Westmoreland County, conveying all their right, title and interest in the property to petitioner. Defendants, Joseph S. Jones and Opal S. Jones, his wife, therefore, even if all their contentions should be sustained, could become nothing more than cotenants with petitioner, holding an undivided one-half remainder interest in the said property. Such an interest could not possibly be the basis for a successful action in ejectment against petitioner. Furthermore, we are required, in our decree, to conform to the Rules of Civil Procedure which became effective on January 1, 1947. We are convinced that defendants, Joseph S.

Jones and Opal S. Jones, have failed to show cause why petitioner's title to the property described in the petition should not be adjudicated and declared valid and indefeasible as against all rights or claims whatsoever, including the rights or claims of said defendants, Joseph S. Jones and Opal S. Jones. Since no question of fact is involved, and since we have had the benefit of arguments of counsel, formal and informal, on the pleadings, it would be idle for us to award an issue, or direct defendants to begin proceedings to establish their title or interest in or claim against the said property. We are constrained to believe that the matter should be determined finally at this time, in order to avoid useless circuity of action and unnecessary delay.

We, therefore, enter the following decree:

And now, to wit, July 18, 1947, after argument and after due and careful consideration, it is ordered, adjudged and decreed, both judges concurring, that the rule heretofore issued be and the same hereby is made absolute against defendants, Joseph S. Jones and Opal S. Jones; it is further ordered, adjudged and decreed that Leo Sukala, Prothonotary of Westmoreland County, be and he hereby is directed to enter judgment in favor of Legion Club of Belle Vernon, Incorporated, and against Joseph S. Jones and Opal S. Jones, and against all other persons who have or claim to have any right, title or interest in, or claim against, the property described in the petition heretofore filed at the above number and term, and it is further ordered, adjudged and decreed that the title of Legion Club of Belle Vernon, Incorporated, to the said real estate be, and it is hereby adjudged, decreed and declared valid and indefeasible as against all rights and claims whatsoever, and defendants, Joseph S. Jones and Opal S. Jones, are forever barred from asserting any right, lien, title or interest in the said property inconsistent with the interest or claim of petitioner.