472

Pittsburgh *v.* Mella, Appellant.

Argued November 20, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Mark R. Craig,* for appellants.

*Joseph M. Tague,* with him *Alvin J. Porsche,* Assistant Solicitors, and *Harry C. Beschel,* Solicitor, for appellee.

OPINION BY GUNTHER, J., March 18, 1952:

City of Pittsburgh, appellee, instituted this action in assumpsit to recover the purchase price ($650) of real estate sold under a written agreement to Charles P. Mella and Anna Mella, his wife, appellants. Appellants demurred to the complaint averring that the City's title acquired by a tax sale in 1900 was not good and marketable or free and clear of encumbrances. No testimony was taken; the facts were agreed upon.[1] The court below overruled the demurrer and entered judgment in favor of the City of Pittsburgh. This appeal followed.

In 1870 Reineman and Dickson laid out the Mellwood plan of lots in the City of Pittsburgh with lot No. 140 (a part of which is here involved) fronting 88 feet on Brereton Avenue and extending back 100 feet by even width and facing 88 feet along Oscar Alley. Oscar Alley eventually became Bigelow Boulevard. Both streets extend in an east-west direction. Lot No. 140 by various conveyances was eventually divided into four parcels of 22 feet by 100 feet, each held by different owners. The parcel involved in this proceeding, correctly designated by proportion and direction, is the "easterly one-fourth of the westerly half of lot No. 140". On October 27, 1900, a writ of lev. fa. was issued

---

[1] The parties, on appeal, have submitted an "Agreed Statement of the Case and of the Facts" in accordance with our Rule No. 41.

directing the Sheriff to sell the property of Joseph Carroll, the purported registered owner, for non-payment of taxes. In due course, the Sheriff executed a deed to the City of Pittsburgh describing the property as follows: "All that certain lot situate in the 13th Ward, City of Pittsburgh, County of Allegheny and Commonwealth of Pennsylvania, on the south side of Brereton Avenue fronting on said street 22 feet and running back 100 feet more or less to Oscar Alley (Now Bigelow Blvd.) bounded and described as follows: Lot 22/100 Brereton Ave., through to Oscar Alley, being the *east one-half* of Lot 140 in Reineman, Dickson et al plan". (Italics supplied) It is to be observed that the description of "the east one-half of Lot 140" is defective; that the proper description is "the easterly one-fourth of the westerly half of lot No. 140".

The applicable law in the City of Pittsburgh at the time of the tax sale in question required that title to real estate be registered in a Deed Registry in the office of the City engineer pursuant to the Act of February 24, 1871, P.L. 126. The Deed Registry has since been abolished and the old records are not available. Thereafter, grantees of real estate offered their deeds to the Recorder of Deeds for recording. It is admitted by all parties that the property was assessed in the name of Joseph Carroll, which assessment would result had a deed been registered by him as grantee in the Deed Registry; that the tax lien as filed in the Prothonotary's office was filed against Joseph Carroll. The name of Joseph Carroll is not recorded in the Recorder of Deeds office; the last recorded owner is listed as Charles Meyran. In 1949, the City of Pittsburgh instituted a proceeding in the court below to perfect its tax title and to confirm the sale to the appellants in accordance with provisions of the Act of July 5, 1947, P.L. 1258, 53 PS §10201.1. In that proceeding, "Charles

Meyran, Joseph Carroll, their heirs, assigns, devisees or legal representatives" were brought upon the record and served by advertisement with a rule to show cause "why the title of the City should not be adjudicated and decreed valid and to further show cause why the sale should not be made free and clear of their respective claim". In due course, the rule was made absolute.

Appellants argue that the original tax sale was void because of failure to name the *recorded* owner or describe the land with sufficient accuracy. Appellants readily admit that "If the deed registry records were still extant, and such records showed that Joseph Carroll was the registered owner of the property presently litigated, appellants would not question the validity of the Sheriff's sale".

The deed of the Sheriff to the City of Pittsburgh in 1900 was *prima facie* evidence of title. In any attack on said title, the City of Pittsburgh would have been permitted to show the exact location of the said part of lot No. 140 by oral testimony. Cf. *Torrence v. Ross,* 159 Pa. Superior Ct. 428, 48 A. 2d 124; *Beacom v. Robison,* 157 Pa. Superior Ct. 515, 527, 43 A. 2d 640; *Meyers v. Manufacturers and Traders National Bank of Buffalo,* 332 Pa. 180, 2 A. 2d 768.

We are all agreed that the errors pertaining to the description do not preclude the establishment of a good and marketable title under the Act of July 5, 1947, P. L. 1258. The only error in the description is in the words "east one half". The correct description should have been "the easterly one-fourth of the westerly half of lot No. 140". But these words as to direction may be treated as surplusage for the lot number and size were sufficient; they would have directed any person to the plan books in the office of the recorder and also to the plat maps in the City and County of-

fices which have carried this one-fourth of lot No. 140 in the name of the City of Pittsburgh as the registered owner since 1900.

There is no challenge here that the requirements of the Act of 1947, supra, have not been complied with; moreover, there is no challenge that all parties having a possible interest in the real estate in question were not brought upon the record. It is admitted that Charles Meyran, the last recorded owner, during the last fifty years has never claimed the property. Judge RENO in the recent case of *Thompson v. Frazier,* 159 Pa. Superior Ct. 395, 401, 402, 48 A. 2d 6, succinctly expressed the legislative intention regarding similar curative statutes permitting municipalities to strengthen and perfect title to real estate acquired by tax sales. Judge RENO said: "The tendency of modern legislation is to strengthen tax titles. . . . Because they were subject to attack for technical, even trifling, irregularities, they were snares and delusions, and people have been unwilling to invest in them. As a consequence, the coffers of our political subdivisions are cumbered with properties acquired at tax sales for which there is no ready market, and yet, because taxes upon them remain unpaid and accumulate from year to year, the subdivision is deprived of needful current revenue. The statute is an attempt to correct this condition by making tax title more attractive and therefore more readily marketable, and it must be presumed that in its enactment the legislature intended 'to favor the public interest as against any private interest': . . ." Cf. *Hess v. Westerwick,* 366 Pa. 90, 95, 97, 76 A. 2d 745; *Ross Appeal,* 366 Pa. 100, 105, 107, 76 A. 2d 749.

Judgment affirmed.