## Private Sale of County Owned Lands

*Andrew M. Pipa, Jr.*, for petitioner.

*Preston L. Davis*, for respondent.

TROUTMAN, J., December 29, 1965. — Andrew M. Pipa, Jr., presented his petition to the court praying

that a rule be issued directed to the County Commissioners of Northumberland County and to Walter S. Finch, Jr., to show cause why the bid of Walter S. Finch, Jr., for the purchase of a 6.45 acre portion and a .22 acre portion, surface only, of the John Brady tract in Coal Township, which tract was formerly owned by Alexander B. Lewis and is presently owned by the County Commissioners of Northumberland County, should not be set aside, disapproved and dismissed and the matter referred back to the county to set a day certain for open competitive bidding in the event the commissioners fail to accept the bid of Andrew M. Pipa, Jr., in the sum of $8,026. A rule was granted, and answers were filed by the county commissioners and Walter S. Finch, Jr., opposing the rule.

The matter was heard before this court and testimony taken. This rule is now before the court for disposition.

On April 19, 1965, a petition was presented to the court by the county commissioners, averring that a bid in the sum of $500, plus costs, had been received from Walter S. Finch, Jr., for the private sale of a 6.45 acre portion and a 0.22 acre portion, surface only, of the John Brady Tract in Coal Township, being a portion of a larger tract purchased at a county treasurer's sale for delinquent taxes by the County of Northumberland, and requesting the court to fix a hearing and, if deemed advisable, approve the sale.

On the same day, the court made an order that a hearing be held on May 12, 1965, on said petition, and further directed that open bids for the land in question be received by the county commissioners in their office until 4:00 p.m. Eastern daylight saving time, May 1, 1965, and the highest of such bids be presented to the court at the hearing. The order further provided for at least 10 days' notice to each municipality having a tax claim, and also that notice be published

in the Northumberland Legal Journal and a newspaper of general circulation at least two weeks prior to the hearing.

A hearing was held on the commissioners' petition on May 12, 1965, at which time the court heard testimony presented by the chief clerk and the county engineer. At this hearing, it developed that the tracts in question were owned by the County of Northumberland, which acquired title thereto on July 23, 1940, at a county treasurer's sale for delinquent taxes on the entire tract consisting of 280 acres. The period of redemption has expired. The record shows that at a regular, stated meeting of the board of commissioners, a resolution was adopted accepting the offer subject to the court's approval. Notices were given to the local taxing authorities, and the notice of the proposed sale was published in accordance with the order of the court.

The county engineer testified that he was acquainted with the land in question, that it was unimproved and that some of it consisted of a steep hillside, and that the offer of $500 was a fair and reasonable offer for the land.

Mr. Arnold, the chief clerk, testified that no objections were filed to the proposed sale. However, there was an offer received in the sum of $700 plus the costs of the proceeding, from Andrew M. Pipa, Jr., Esq. Thereupon, the court made an order that the county commissioners accept offers by sealed bids at their office in the court house, Sunbury, Pa., up to 4:00 p.m. on Thursday, May 20, 1965, and that thereafter the bids be opened and the property be sold to the highest bidder of the bids then received, subject to the provision that no bid may be accepted for a lesser amount than $700 plus the costs of the proceedings, and that each bid be accompanied by a deposit of at least 10 percent of the bid price offered. The order

further provided that the court will entertain a further motion to approve the sale to the highest bidder of the sealed bids. This procedure has been followed by this court for almost 20 years in similar situations.

Two sealed bids were received by the county commissioners by 4:00 p.m. on May 20, 1965. Upon opening the sealed bids, there was a bid of Walter S. Finch, Jr., in the sum of $7,026, accompanied by a 10 percent down payment in the sum of $702.60, and also a bid submitted by the present petitioner, Andrew M. Pipa, Jr., Esq., in the sum of $2,025, accompanied by a 10 percent down payment in the sum of $202.50. This bid was $5,001 lower than the sealed bid tendered by Walter S. Finch, Jr., and the county commissioners accepted the bid submitted by Walter S. Finch, Jr., he being the highest bidder. The deposit made by Andrew M. Pipa, Jr., Esq., was returned to him by the county commissioners.

On June 4, 1965, the county commissioners addressed a letter to Sanford S. Marateck, Esq., attorney for Finch, inquiring as to what name was to be placed on the deed, and also that they would expect payment of the balance of the bid within 10 days. Subsequently, on June 11, 1965, the attorney for Finch was advised that the time for completing the transaction was extended for a period of 30 days from the date of the letter. On June 24, 1965, following a meeting between the representatives of Finch and the county commissioners, the county commissioners adopted a resolution granting an extension until October 20, 1965, to complete the transaction. On August 6, 1965, Andrew W. Pipa, Jr., Esq., tendered an offer to the county commissioners for the purchase of the property in question for the sum of $8,026, which offer was accompanied by a 10 percent down payment in the sum of $802.60.

The proceedings in this case were under the Act of

May 21, 1937, P. L. 787, as amended by the Act of July 29, 1941, P. L. 600, and subsequent acts, 72 PS §5878(b), (c) and (d). This statute provides for the sale of lands purchased by the county commissioners at a treasurer's sale where the period of redemption has expired for amounts less than the taxes due, with the approval of the court of common pleas, after hearing. All of the provisions of this statute have been complied with in respect to the proposed sale in this case. This act makes no provision as to when the purchase money shall be paid by the successful bidder. The court did not specify when the balance of the bid price was to be paid; nor was any limitation set on the payment thereof. As was customary where a better bid was received prior to the time of hearing on the petition to approve the sale, the court ordered that sealed bids be received up to 4:00 p.m., May 20, 1965, and the property awarded to the highest bidder. This was done in this case, and the only fault which petitioner alleges in respect to the approval proceedings is that the county commissioners exceeded their authority in extending the time to Finch or his representatives for the payment of the balance of the purchase price.

It is well settled that the county commissioners, in the sale of county owned land acquired at tax sale, are fiduciaries dealing with public property, the county holding title to such property as trustee for the benefit of the several taxing authorities: In Re: Private Sale of County Owned Lands, 25 Northumb. 97. It is likewise well settled that the court possesses full discretion over the approval or disapproval of any proposed private sale: Baton Coal Company Appeal, 365 Pa. 519.

The criterion by which the court is to gauge the merits of a proposed sale is not established as the largest sum which the property will bring, but rather whether the prospective terms of sale satisfy the court

that the bargain is proper and to the advantage of all the taxing authorities interested: In Re: Private Sale of County Owned Lands, supra.

The court is of the opinion that it adopted the only fair method of permitting prospective purchasers to have a chance to purchase the property. In the case of In Re: Sale of Lands in Union Township, 47 D. & C. 253, the court directed that the parties interested be allowed to appear before the county commissioners and bid for the property within a specified time, where a higher bid was received at the time fixed for the hearing on the petition for the approval. In the present case, there were evidently only two people interested in the purchase of this property, and by permitting them to submit sealed offers to purchase, no bid to be less than the highest offer obtained in the prior proceeding, the court's procedure was fair not only to the bidder, but also to the county.

The record discloses that the county commissioners have no definite procedure in relation to the time of settlement. The testimony of the county clerk reveals that usually the successful bidder appears in the commissioners' office with the balance of the purchase money; at other times, the commissioners notify the successful purchaser when the deed is ready and request that the purchaser make full settlement within 10 days, or the court will be asked to disapprove the sale, and, at various times, 30 days or longer have been allowed for the purpose of paying the balance of the purchase price and completing the sale.

The testimony reveals that this case was unusual in that a large sum of money was bid for this unimproved, mountainous piece of land, the actual market value of which was about $500. There is testimony that the purchaser desired to make tests, surveys and other explorations of the land before completing the purchase, he having already deposited 10 percent of

his bid. Considering the circumstances in this case, we do not find that it was unreasonable on the part of the county commissioners to extend the settlement date to October 20, 1965.

The County Code of August 9, 1955, P. L. 323, sec. 203, provides that the corporate power of each county shall be vested in a board of county commissioners. It is through the board of commissioners that the county performs its usual functions of government, and they exercise all the corporate powers of the county. This includes the power to make contracts on behalf of the county, and in the performance of their duties and in the exercise of their corporate powers, the county commissioners are clearly vested with wide discretion with which the court will interfere only upon an indubitable showing that the discretion has been abused: Kistler v. Carbon County, 154 Pa. Superior Ct. 299.

The county commissioners did not abuse their discretion in granting the extension of the time of payment requested by Finch. The amount bid by Finch was the largest amount in the memory of the chief clerk, who has been serving in that capacity for many years, that has ever been bid in Northumberland County for unimproved county owned land. Commissioner Hoffman testified that the bid was much larger than the usual purchase price, and that the commissioners were anxious to have this land restored to the tax rolls. This commissioner likewise testified that if this would have been his own land, he would have acted in exactly the same manner.

The bid of petitioner in the sum of $8,026 was received by the county commissioners on August 6, 1965, about a month and a half after they had agreed by formal resolution to extend the time for the completion of the sale of the land to Finch to October 20, 1965. Petitioner was the same person who had submitted a

sealed bid in the sum of $2,025. While the court is desirious of obtaining the best price possible for county owned lands, it cannot lend itself to surreptitiously set aside a right which has been acquired by Finch in full compliance with the order of the court. To permit such bids to be made at any time an individual may see fit would create chaos and uncertainty in the disposal of such lands, which should be returned to the tax rolls wherever possible.

Finch and his representatives have not as yet paid the balance of the purchase money for the reason that the court, on motion of the present petitioner, stayed all proceedings until the disposal of this rule. We find that the proposed sale has met all requirements of the law, and such sale should be approved.

However, at the time of the hearing in this case, which took place on September 10, 1965, it was developed that on September 9, 1965, representatives of the State Department of Highways met with the county commissioners and disclosed that future plans showed the use of the property in question as involved in a change in the highways in that locality. The county commissioners indicated that had this fact been known at the time, they would not have accepted the original offer made by Finch for the purchase of this land.

There was no representative of the Department of Highways called as a witness at the first hearing. Subsequently, the court ordered the hearing reopened for the purpose of receiving testimony from the Pennsylvania Department of Highways as to what was contemplated in relation to the lands which are the subject of this sale and, on December 9, 1965, Kenneth Larsen, assistant district engineer in charge of plans and reconstruction activities, was called as a witness.

According to Mr. Larsen's testimony, he assists in the formulation of projects to be submitted under the Federal aid to secondary roads projects. There has

been some work done on a relocation of legislative route 49015 by an engineering firm by the name of Buchart-Horne, of York, Pa., under the supervision of his office. He testified that these projects are reviewed by the State Highway Commission and that at the present time, this proposed change is not included in the 1965-66 program, which began in July 1965. After the proposed plan is submitted, the engineering firm will draw up final plans to be submitted to the State Highway Commission. According to this witness, it will take about one and one half years before such plans are ready. After the plans are approved by the State Highway Commission, then they will be presented to the Governor for his approval, after which the acquisition of rights of way would commence. It is his testimony that it will take over three years before the project is actually commenced, if the various agencies approve of the plan. He could give no definite answer as to whether this project would be given any position of priority.

The most that can be said from the testimony submitted to this court is that there are changes contemplated in the vicinity of this legislative route and present route 61 in the vicinity of the lands in question which would, if the present plans are not changed, take most of the land which is involved in this action. From the testimony of Mr. Larsen, the court can only conclude that there is a contemplated project which calls for the utilization of this land which may or may not materialize, and if it does materialize, would not come into existence for another three years at the least.

If the court should now decide that the present sale not be approved and that the county commissioners hold the lands awaiting the pleasure of the Department of Highways, it is possible that they will be obliged to hold the lands for at least the next three years, or possibly much longer. There is no definite assurance

that the plan as contemplated by the Department of Highways will become a reality. On the other hand, if the sale should be approved, the county will receive for itself and the other taxing bodies the sum of $7,000, which can now be used by them and which amount is grossly in excess of the fair market value of these lands. Likewise, the lands will be placed on the active tax assessment rolls, and the purchaser will be obliged to pay taxes on the property. Any improvements that the purchaser would make would inure to the present benefit of all of these taxing bodies in the form of increased tax assessments.

On the other hand, there is nothing to prevent the Department of Highways from accelerating this project and condemning the land before any improvements are erected thereon. As far as the amount of land damages involved, they would be based on a fair market value of the land, rather than on an inflated value placed upon it by an individual purchaser. Immediately adjoining this land are other lands owned by Walter S. Finch, Jr., which are also involved in the contemplated highway project. There is nothing to prevent him from improving his land to a greater extent than now exists so that the disapproval of this sale would not necessarily limit the amount of land damages that the Commonwealth would be obliged to pay, if and when that step is reached.

If this court would base its disapproval of this sale on the ground that it is possible this land may be utilized by the Commonwealth for some future road project, it is conceivable that much of the county owned land would remain in the ownership of the county for long periods of time because of possible highway use without any assurance that the land would ever be used for highway purposes.

Under all the circumstances presented in this case, the court finds no equitable or legal reason why pe-

titioner's rule to show cause why the sale to Walter S. Finch, Jr., should be disapproved and his bid dismissed, and the rule must be refused and the petition dismissed.

## ORDER

And now, to wit, December 29, 1965, the petition of Andrew M. Pipa, Jr., Esq., for disapproval and dismissal of the bid of Walter S. Finch, Jr., is hereby dismissed, and the rule granted thereon is hereby refused. It is ordered, adjudged and decreed that the sale of the lands in question to Walter S. Finch, Jr., in the sum of $7,026 is hereby approved, provided the balance of the purchase price is paid forthwith; if the balance of the amount bid is not paid forthwith, the sale shall be disapproved and all proceedings in connection with the proposed private sale of said county owned lands shall be vacated. Let an exception be noted for petitioner.