Scott E. FIEG t/d/b/a et al., Kevin Fieg t/a/d/b/a et al., Fieg Brothers Coal Company et al., Fieg Brothers Coal Co. et al.,

v.

SOMERSET COUNTY TAX CLAIM BUREAU, Penn Pocahontas Coal Co., Brothersvalley Township Supervisor, Somerset County, et al., Berlin–Brothersvalley School District, William L. Cicciarelli.

**William L. Cicciarelli, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 17, 1995.
Decided April 28, 1995.

Daniel R. Tobin, for appellant.

Jeffrey L. Berkey, for appellee.

Before McGINLEY and FRIEDMAN, JJ., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

■ William L. Cicciarelli appeals from an order of the Court of Common Pleas of Somerset County granting the Petition to Disapprove Private Tax Sale filed by Fieg Brothers Coal Company (Fieg Brothers) and fixing the minimum sale price for the property at $15,000.

On September 8, 1986, the subject property was exposed to public sale for non-payment of delinquent real estate taxes. However, because no one bid the minimum upset price established by the Somerset County Tax Claim Bureau (Bureau), the property was not sold. Subsequently, on February 10, 1994, Cicciarelli made a private bid on the property pursuant to section 613 of the Real Estate Tax Sale Law (Tax Sale Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.613. Cicciarelli's bid of $9,853.96 was equivalent to the upset price; that is, it was equal to 100% of the amount of outstanding county, township and school real estate taxes due on the property. *See* section 605 of the Tax Sale Law, 72 P.S. § 5860.605. Cicciarelli also tendered to the Bureau the costs for processing the sale. When none of the taxing authorities objected to the bid, the Bureau approved the sale and made the proper notices and advertisements as required by section 613 of the Tax Sale Law.

On April 11, 1994, Fieg Brothers filed a timely Petition to Disapprove Private Tax Sale (Petition), alleging that the property's value exceeded the amount of Cicciarelli's

bid,[1] and that Fieg Brothers was willing to pay a greater amount to purchase the property. On October 26, 1994, following the July 13, 1994 hearing on the Petition,[2] the trial court disapproved the sale, established a minimum price equal to Fieg Brothers' bid of $15,000 and directed an auction sale of the property if more than one party appeared to offer the price set by the court. In its opinion, the trial court rejected Fieg Brothers' arguments that its higher bid automatically precluded approval of the sale to Cicciarelli or that the Bureau acted as trustee for all those identified in the Tax Sale Law's distribution scheme and, therefore, had a fiduciary duty to obtain the highest possible price for the property.[3] Nevertheless, the trial court held that where an interested purchaser has submitted a significantly higher bona fide and irrevocable bid, the sale would not be approved absent circumstances which would lead the court to approve the original sale.

Cicciarelli appeals to this court,[4] asking us to determine whether, in a private tax sale governed by section 613(a) of the Tax Sale Law, a bid that equals the amount of delinquent real estate taxes and administrative costs is a "sufficient" price such as to preclude a court from disapproving the proposed sale even where there has been a subsequent, higher bid presented by way of a petition to disapprove the sale.

Resolution of this issue revolves around the intended meaning of the word "sufficient" in the context of section 613(a) of the Tax Sale Law, which provides in pertinent part:

§ 5860.613. **Properties not sold because of insufficient bid may be sold at private sale**

(a) At any time after any property has been exposed to public sale and such *property was not sold because no bid was made equal to the upset price,* ... the bureau may ... agree to sell the property at private sale, at *any* price approved by the bureau.... The corporate authorities of any taxing district having any tax claims or tax judgments against the property which is to be sold, the owner, an interested party, or *a person interested in purchasing the property may, if not satisfied that the sale price approved by the bureau is sufficient,* ... petition the court of common pleas of the county to disapprove the sale. The court shall, in such case, ... hear all parties. After such hearing, *the court may either confirm or disapprove the sale as to it appears just and proper....*

72 P.S. § 5860.613(a). (Emphasis added.)

Cicciarelli's argument on appeal can be simply stated. He notes that the only statutory basis to seek disapproval of a private tax sale is insufficiency of price. Cicciarelli reasons that because a bid which equals the amount of the tax delinquency is, by definition, sufficient,[5] a court must approve any bid

1. Cicciarelli has stipulated to this as fact. (R.R. at 50.)

2. Before the hearing took place, Cicciarelli filed a Motion for Judgment on the Pleadings; however, the trial court denied the motion as a remedy unavailable in a case commenced by a petition to disapprove a private tax sale under section 613 of the Tax Sale Law. (R.R. at 42–45.) In addition, on July 12, 1994, the record owner of the property filed a joinder in Fieg Brothers' Petition; however, sustaining Cicciarelli's objection, the trial court dismissed the joinder as outside the 45 day time limit imposed by section 613 of the Tax Sale Law. (R.R. at 93.)

3. In making this argument, Fieg Brothers notes that it is not only taxing authorities which may benefit from a private sale of property under the Tax Sale Law; rather, once the taxing bodies have been made whole out of the sale proceeds, any excess funds are distributed to mortgagees and other lien holders of record and, finally, to

the owner of the property. Section 205(d)(1–5) of the Tax Sale Law, 72 P.S. § 5860.205(d)(1)–(5).

4. Our scope of review over a proposed private sale under section 613 of the Tax Sale Law is limited to determining whether the trial court abused its discretion. *Mehalic v. County Tax Claim Bureau,* 111 Pa.Commonwealth Ct. 398, 534 A.2d 157 (1984).

5. Cicciarelli arrives at this conclusion by noting that section 613 of the Tax Sale Law, entitled "Properties not sold because of insufficient bid may be sold at private sale," begins by stating ... "such property was not sold because no bid was made equal to the upset price." Therefore, reasons Cicciarelli, an insufficient bid is one that is not equal to the upset price. From this, Cicciarelli extracts the principle that, by definition, a bid equal to the upset price is, automatically, "sufficient" as a matter of law.

equal to the upset price and, in fact, is precluded from disapproving a private tax sale for that amount, even where a higher purchase price is subsequently offered.

Cicciarelli maintains that this position also represents the intent of the legislature, reasoning that because the legislature authorized the Bureau to approve a sale at *any* price, the disapproval provisions are intended only as a review mechanism to ensure that the best price is obtained *to the benefit of the various taxing authorities.* In support of this argument, Cicciarelli relies on our decision in *Mehalic v. County Tax Claim Bureau,* 111 Pa.Commonwealth Ct. 398, 534 A.2d 157 (1984), in which we observed that "the proper criterion 'to gauge the merits of a proposed [private] sale is not established as the largest sum which the property will bring, but rather whether the prospective terms of sale satisfy the court that the bargain is proper and *to the advantage of all the taxing authorities interested.'* " *Id.* at 403, 534 A.2d at 159, quoting *Schuylkill County Tax Claim Bureau v. Tremont Township,* 104 Pa.Commonwealth Ct. 338, 345 n. 6, 522 A.2d 102, 105 n. 6 (1987). Relying on this language, Cicciarelli contends that judicial inquiry should end when the upset price is bid because, although a bid which exceeds this amount benefits a delinquent owner and/or a dilatory prospective purchaser, the

public fisc garners no further advantage once the upset price is met.[6] Moreover, Cicciarelli urges us to adopt his position as affirmance of the long standing judicial philosophy of strengthening tax titles and making them less subject to attack, the overriding objective of which is to encourage such sales in order to recoup delinquent taxes and return the property to the tax rolls. *In re: Private Sale of .7682 Acres, Lavansville Tract,* 51 Somerset L.J. 333 (1993), quoting *Thompson v. Frazier,* 159 Pa.Superior Ct. 395, 48 A.2d 6 (1946);[7] *see also Schuylkill County Tax Claim Bureau* (stating that one of the purposes of the Tax Sale Law is to get property back on the tax rolls on terms advantageous to the taxing districts).

Fieg Brothers counters that under the express provisions of section 613 of the Tax Sale Law, the legislature requires the court, in all situations, to exercise its independent judgment as to whether a proposed private sale is both just and proper[8] under the circumstances of each case, and allows the court great latitude in making that determination. Fieg Brothers contends that in a proper exercise of that discretion, a court may disapprove the Bureau's private tax sale even where the bid equals the upset price and even though none of the taxing authorities

**6.** Based on the statutory distribution scheme, proceeds from a public, private or judicial sale of property are first distributed to the taxing authorities, then to any mortgagees or lien holders, and then to the property owner. Thus, only the latter two categories benefit from a sale price in excess of the delinquent taxes owed. Section 205(d) of the Tax Sale Law, 72 P.S. § 5860.205(d). However, as the trial court noted, if the owner does not claim excess proceeds within three years of the sale, that excess will, in fact, be distributed to the taxing districts. Section 205(f) of the Tax Sale Law, 72 P.S. § 5860.205(f).

**7.** Cicciarelli asserts that if Fieg Brothers' position is adopted, it will destroy incentives to participate in a private sale by creating a situation where a party expends considerable time, energy and resources pursuing a private sale only to be outbid at the eleventh hour by a party with greater resources and, thereby, forced to participate in extensive and expensive court proceedings. Thus, Cicciarelli maintains that the more rational view is to hold that the amount obtained at any sale is "just" and "sufficient" within the

meaning of the statute where the taxing authorities are made whole, and the only time that the court should consider the question of value to determine the justness of a private sale is where the private bid is less than the upset price.

The trial court conceded that recognition of higher bids at this stage of the proceedings might have a possible chilling effect on persons willing to acquire properties held by the Bureau. However, guided by the statutory language, the trial court accepted that interested bidders must assume the risk that a higher bid may be submitted. Moreover, we note that where an individual is subsequently outbid, it is permissible to reimburse that person for the out-of-pocket costs incurred in the bid process by making those costs part of the new minimum bid. (R.R. at 69–70.) As to reimbursement for time expended, the record indicates that the trial court can also take this into account in setting a minimum bid price. (R.R. at 88–91.)

**8.** Here, it is the justness of the sale which is at issue; there is no question raised as to whether the sale was proper, i.e., whether it was conducted in full compliance with statutory procedures.

object where, as here, the circumstances warrant it. We agree with Fieg Brothers.

Section 613(a) of the Tax Sale Law clearly provides that the trial court, when petitioned to disapprove a private tax sale, *shall* hear all parties and, after such hearing, *may* confirm or disapprove the sale as to it appears "just and proper." Here, the trial court acknowledged that it must accord deference to the Bureau's decision to accept a given bid and agreed that the Bureau had no duty to maximize the sale price for the benefit of an owner or lien creditor. Indeed, the trial court stated that if the offer covers the delinquent taxes and costs, the Bureau performs its duty by approving the sale. However, the trial court also insisted that at the stage of the proceedings where the trial court becomes involved, it is not bound to approve a sale solely because the proposed bid equalled the upset price. Rather, guided by the statutory language, the trial court concluded that even where the taxing bodies will be made whole by a proposed bid, when the property owner or other interested person petitions for disapproval, the trial court should look at *all the circumstances* to determine whether to approve or disapprove the sale as it deems just and proper. In an exercise of this discretion, the trial court here disapproved the private sale under circumstances where another party made a timely, guaranteed and substantially higher offer for the property, a bid that was more in line with the actual value of the real estate and provided some financial return to the property owner, and there were no other factors presented which would lead the trial court to approve the originally proposed sale. In doing so, the trial court did not abuse its discretion.

This result does not conflict with the case law relied upon by Cicciarelli. In *Mehalic,* a bid representing 76% of the taxes due on the property was deemed sufficient where no taxing bodies objected, the owners that petitioned for disapproval offered no bid of their own and *no other higher bidders appeared.* Again, in *Private Tax Sale of .7682 Acres, Lavansville Tract,* the proposed price for private sale of property was considered adequate where the bidder offered 100% of the delinquent taxes, none of the taxing bodies objected to the proposed sale, *and no other bidders appeared at the hearing to offer a higher bid.* By comparison, in *In re: Private Sale of County Owned Lands,* 25 Northumberland L.J. 97 (1953), although it is unclear whether the initial bid equalled the taxes due on the property, the court disapproved an offer of $15,100 in the face of a higher offer of $20,000.

As indicated by these cases, an objector will not succeed on a petition for disapproval when that petition is based on grounds that a higher price can be expected *if a purchaser can be obtained.* However, where, as here, there is a tangible offer in the form of a bona fide bid, accompanied by a check in that amount, we agree that the court should not have to ignore the higher offer unless presented with a reason for doing so.[9]

9. An example of this eventuality can be found in *In re Private Sale of County Owned Lands,* 40 Pa. D. & C.2d 301 (1965). In that case, two prospective purchasers of county owned property participated in a sealed bid proceeding, after which the county commissioners accepted the higher bid. Subsequently, the losing bidder submitted a new bid which was higher than the one already accepted and petitioned the court to set the now lower bid aside. The court recognized the paramount interest of the taxing bodies which would benefit from the higher amount but, nevertheless, approved the sale at the price originally accepted by the county commissioners, pointing out that this was the only fair method of permitting prospective purchasers to buy the property.

Similarly, in *In re: Private Tax Sale of 384 Acres Minerals, Somerset Township 42–035980,* —— Somerset L.J. —— 1994, No. 13 Miscellaneous 1994, slip op. (October 27, 1994), a companion case to the one currently before us, the trial court confirmed the private sale of land to Cicciarelli *even though the petitioner,* Svonavec, Inc., submitted a higher bid. In that case, Cicciarelli submitted a bid of $621.72 in December 1993, an amount equal to the outstanding 1991 and 1992 taxes and costs. Although Cicciarelli's December bid did not include any amount for payment of 1993 taxes, which would become past due in January 1994, he agreed to pay the 1993 taxes and the Bureau *accepted Cicciarelli's* bid on that condition. Svonavec, a party interested in purchasing the subject property, filed a timely petition to disapprove the sale contending that the bid was insufficient. At the hearing, Svonavec offered to pay $1,000 for the property, which differed from Cicciarelli's bid only in that it included an amount to defray the 1993 tax obligation. Recognizing that Cicciarelli had already agreed to assume responsibility for the 1993 taxes, the trial court determined that, under

We also note that if we were to accept Cicciarelli's argument, it would mean that a private bid equal to the amount of delinquent taxes and costs would automatically withstand any objection based on insufficiency, including one made by the property owner. In this regard, we consider our decision in *Breinig v. North Penn School District*, 19 Pa.Commonwealth Ct. 377, 339 A.2d 617 (1975), instructive. In *Breinig*, we determined that a taxing district has no standing to object to a private sale on grounds of insufficiency where the private bid equals the upset sale price. We reasoned that because this amount fully satisfies all of the taxing district's claims in the property, it is necessarily sufficient *as to the taxing district*. However, we stopped short of holding that such a sale price was "sufficient" as a matter of law with regard to all possible objectors. In fact, we specifically noted that any excess monies above the upset price would be awarded to the owner, thereby implying that, whereas the taxing district would have no standing to object to a private bid that was equal to the amount of delinquent taxes, an owner still would retain the ability to challenge a private sale bid for insufficiency under those same circumstances because the owner had something to gain from a higher sale price.

Cicciarelli makes some persuasive arguments; however, ultimately they must fail.

Contrary to his claim, it is far from clear that Cicciarelli's position is the one intended by the legislature, particularly where the legislature could have easily made that intention plain through the statutory language, but did not. As written, section 613 of the Tax Sale Law clearly does not limit the right to object to a proposed private sale to circumstances where the original bid is less than the delinquent taxes and costs.[10] At the hearing, Mr. Nathan Rascona, appearing for the Bureau, attempted to explain this admitted inconsistency between the Tax Sale Law and Cicciarelli's position, asking us to assume that the legislature omitted such a limitation simply because the legislature never contemplated the possibility that private bids might equal the upset price. Rather, Mr. Rascona suggests that the legislature, anticipating that such bids would always be lower than the taxes due on the property, included sufficiency provisions only to prevent a private buyer from purchasing property with a large tax responsibility at an absurdly low price. (R.R. at 67, 81–83, 85–86.) Finding no evidentiary support for this theory, we decline to accept it.[11]

Because we can perceive no abuse of discretion, we affirm the order of the trial court.

### ORDER

AND NOW, this 28th day of April, 1995, the order of the Court of Common Pleas of

---

these circumstances, it was just and proper to deny the petition for disapproval.

**10.** Cicciarelli contends that the legislature does, in fact, express this limitation, albeit somewhat obliquely. However, under the express language of the statute, once a petition to disapprove a private tax sale is filed, the trial court is *required* to hear all parties and then determine whether the sale is just and proper. If, as Cicciarelli suggests, there are cases where the legislature intended the trial court to be without discretion in making this determination, it is difficult to believe that the legislature would not have *specifically* disallowed the filing of such petitions in those cases.

**11.** In fact, we note that the legislature amended section 613 of the Tax Sale Law in 1986. Whereas previously only the affected taxing districts and the property owner had standing to petition for disapproval of a private tax sale, the statute now specifically allows interested parties and persons interested in purchasing the property to seek disapproval of the private sale where

they feel that the price bid is insufficient. The amendment also altered the notice provisions for a private sale. Where formerly only the taxing districts and property owner were notified of the proposed sale, the statute now calls for notice by publication, requiring notice to appear a minimum of two times in at least one newspaper of general circulation in the county where the property is located and in that county's official legal journal. Section 613(a) of the Tax Sale Law, 72 P.S. § 5860.613(a).

It is reasonable to conclude that the purpose of this amendment was to elicit higher bids from otherwise uninvolved parties in order to achieve a more just price for the property. In doing so, the statute does not expressly limit its solicitation to circumstances where the original bid is less than the delinquent tax and costs. Indeed, potential purchasers are not restricted to objecting only where the sale price approved by the bureau *is insufficient;* rather, they are entitled to petition for disapproval of any proposed sale within 45 days *if they are not satisfied* that the approved *bid is sufficient.*

Somerset County, dated October 26, 1994, is hereby affirmed.